304 P.2d 1081

Q. T. SHEPHERD, Plaintiff and Appellant,

v.

Max B. HOLBROOK and Blanche C. Holbrook, his wife, Defendants and Respondents.

No. 8549.

Supreme Court of Utah.

Dec. 17, 1956.

Cline, Wilson, & Cline, Milford, Richard C. Howe, Murray, for appellant.

Albert J. Colton, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a judgment favorable to defendant in a claim and delivery action involving chickens. Affirmed, with costs to defendants.

In January, 1950, defendants agreed in writing "to sell" and persons named Barker agreed "to buy" a chicken farm, particularly described, certain machinery and equip-

ment used for raising chickens, together with 8,181 chickens, scheduled in an attached inventory, which by reference was "made a part hereof." As consideration, Barkers deeded a farm belonging to them, and transferred to defendants by written bill of sale certain personal property situate thereon, agreeing to pay a balance in installments. The contract, substantially following the type of uniform real estate contract commonly used, contained the usual provisions that upon final payment the sellers would convey the property by warranty deed, and that if the buyers defaulted in their payments, the sellers might re-enter the premises and be relieved of any obligation to convey. There was no separate consideration recited for the realty or for the personalty, but the whole ran to both as a package deal. There was no provision specifically retaining title to the personalty and none to the contrary. However, the Barkers agreed "to maintain at all times, *until the sellers are paid in full*, approximately 8,000 laying chickens." They also agreed to make payments, either at $100 per month or out of net income "which the buyers receive from the sale of chickens, eggs, hay or any other farm products produced" in the operation of the chicken farm.

Two years later, plaintiff obtained a chattel mortgage from the Barkers to secure payment of an accrued feed bill, which mortgage purported to include chickens then on the premises and any replacements or increase thereof. It would appear that plaintiff knew of the agreement between defendants but not in detail. However, we believe there is sufficient evidence to sustain the trial court's conclusion that plaintiff had sufficient knowledge of the facts as would put a reasonably prudent person on inquiry.

Plaintiff urges that under the terms of the contract (1) title to the chickens mentioned therein passed to Barkers, (2) title to any replacements was not reserved to defendants, and anyway (3) a right to sell the chickens was given from which defendants could not renege. Defendants urge the opposite on all counts.

It is our duty to determine the intentions of the parties from the language they employed, the nature of the consideration paid, and the atmosphere in which the transaction occurred, and after canvassing the record in that fashion, we conclude that the intention of the parties was that title vest in the realty, the personalty (egg grader, egg cleaner, feed mixer, electric motor, roughage mill, 1949 Jeep, 2 electric pumps), including the chickens then on the premises and their increase or replacements up to 8,000, in the defendant sellers,—even though concededly the contract used words of future transfer and occupation that normally apply to real, not personal property transactions.

This was essentially a chicken farm, a going concern, the parties being interested in the land and the chickens as a unit, not alone. The contract was indivisible, there being no separate consideration allocable to realty or personalty. By its terms it was a contract "to sell" and "to buy" with the connotation of an intention to transfer ownership in future. The personalty, including the chickens, was by reference incorporated in the contract and in the same place where the realty was described, which has a tendency to show an intention to treat such personalty in the same manner as the realty so far as transfer and payment of consideration are concerned. There was no provision for passage of title to the defendants' personalty in præsenti, whereas, significantly enough, when the parties dealt with the Barkers' personalty it was transferred presently by written bill of sale, there being no question as to intent. The provision requiring the buyers at all times to maintain approximately 8,000 laying chickens on the farm "until the Sellers are paid in full" certainly does not sound like a condition pointing up an intention presently to pass title, but impresses us that it evidenced an intent that the chickens should be maintained at a constant number by replacement of useless birds or by an increase in the flock as some sort of assurance that the sellers would receive the consideration promised or have security for its nonavailability. We are of the further opinion that such a provision, taken in context with the rest of the contract, reasonably satisfies plaintiff's contention that an intent to include replacements must be expressed clearly in a title retaining document, as plaintiff's authorities point out and with which we agree. It seems just as reasonable also to conclude that such provision, so viewed, reflects an intention to give consent to sell the chickens only insofar as replacements were necessary because of diminishing returns, or to those chickens in excess of 8,000 that the Barkers had on the premises by purchase or increase. Under such facts it would seem that the contract was indivisible and that title to both realty and personalty was intended to be treated alike as to time of passage, which conclusion, under similar circumstances seems to be supported by the authorities, some of which are collated in a strikingly similar case, Soderstrom v. White, 68 N.D. 293, 279 N.W. 306, 117 A.L.R. 391, whose statement of principles we accept and refer to with approval.

McDONOUGH, C. J., and CROCKETT, WADE and WORTHEN, JJ., concur.